UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA SHAVERS,<br>   Plaintiff,<br>  v.<br>MICHAEL MURPHY,<br>   Defendant. | Case No. 16-cv-05421-DMR<br><br>**ORDER GRANTING DEFENDANT MICHAEL MURPHY'S MOTION TO DISMISS PLAINTIFF CYNTHIA SHAVERS'S FOURTH AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 40 |

Defendant Michael Murphy ("Murphy") moves the court to dismiss Plaintiff Cynthia Shavers's ("Ms. Shavers") Fourth Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Motion to Dismiss ("MTD") [Docket No. 40]. Ms. Shavers opposes. [Docket No. 42]. This matter is suitable for resolution without a hearing. *See* Civ. L.R 7-1(b). Having considered the parties' submissions, and for the reasons stated below, Murphy's motion to dismiss is granted with leave to amend. Ms. Shavers must file her Fifth Amended Complaint by no later than January 22, 2018.

## I. FACTUAL AND PROCEDURAL BACKGROUND

To provide context for Murphy's pending motion to dismiss, the court will discuss Ms. Shavers's prior related case and her prior pleadings in this case.

### A. Ms. Shavers's Prior Related Case: 4:16-cv-00957-DMR

On February 26, 2016, in a prior related case, Ms. Shavers filed an application to proceed *in forma pauperis* ("IFP"), along with a complaint against seven unknown officers from the U.S. Marshals Service ("USMS Defendants") alleging a violation of the Fourth Amendment, as well as a state law claim for false arrest. [Docket Nos. 1, 2[1]].

---

[1] The docket numbers in Section I (A) refer to the docket in Ms. Shavers's prior action, Case No.

Ms. Shavers alleged that on March 24, 2015, seven unknown officers from the USMS detained and arrested her at some unspecified location, then transported her to the Alameda County Jail in Dublin, CA. Compl. [Docket No. 1] ¶ 4. The USMS Defendants never told her why she was arrested. *Id*. Her bail was set at $80,000, and her husband bailed her out with an $8,000 bond. *Id*. No charges were ever filed against her and she never received an explanation for her arrest and detention. *Id*. Ms. Shavers requested $500,000 in damages, including $8,000 for her bail bond, $300 in lost wages, and "damages for violation of constitutional rights." *Id*. at ¶¶ 5-6.

On June 3, 2016, the court granted Ms. Shavers's IFP application, and conducted a review of the complaint pursuant to 28 U.S.C. § 1915(e)(2). 6/3/16 Order [Docket No. 6]. The court found that Ms. Shavers sufficiently pleaded a *Bivens* claim for a violation of the Fourth Amendment. *Id.* at 3. However, the court dismissed the tort claim for failure to exhaust administrative remedies as required by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a). 6/3/16 Order at 4.

On August 15, 2016, the USMS Defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6). MTD [Docket No. 14]. They argued that Ms. Shavers failed to state a claim because she was arrested on March 24, 2015 pursuant to a facially valid warrant. They alternatively argued that if the court concluded Ms. Shavers had stated a claim, it should still be dismissed because they were entitled to qualified immunity. MTD at 2-3; Arrest Warrant [Docket No. 15-1]. Ms. Shavers opposed. Opp'n to MTD [Docket No. 21]. She argued that there was no probable cause for the arrest warrant due to the fact that charges were not filed against her for a previous arrest in December 2014. Opp'n to MTD at 1.

Before the court could rule on the motion to dismiss, Ms. Shavers voluntarily dismissed the case without prejudice on September 22, 2016. Notice of Voluntary Dismissal [Docket No. 23].

---

4:16-cv-00957-DMR.

### B. Original and Amended Complaint in This Case

On the same day she dismissed the prior case, Ms. Shavers initiated this one by filing an IFP application along with a complaint naming Murphy as the sole defendant. [Docket Nos. 1-2]. On October 31, 2016, she filed an amended complaint. Amended Compl. [Docket No. 10.]

Ms. Shavers alleged that her family members were involved in a shooting in December 2014. She "tried to go after the shooter," but was herself arrested. Compl. [Docket No. 1] at 4. No charges were filed against her and "[t]he case was exonerated later." *See id.*; Am. Compl. at 3. On March 24, 2015, Ms. Shavers was arrested by U.S. Marshals who claimed to have an arrest warrant. They charged her with violating California Penal Code section 245(a), assault with a deadly weapon. Compl. at 5; Am. Compl. at 3. Ms. Shavers's husband bailed her out and she was again "exonerated" of these charges on March 26, 2015. Compl. at 5. Ms. Shavers alleged that her March 24, 2015 arrest violated her constitutional rights, including her Fourth Amendment rights. Compl. at 2; Am. Compl. at 2.

On February 13, 2017, the court granted the IFP application, and dismissed the original and amended complaint with leave to amend. 2/13/17 Order [Docket No. 12]. As explained in the 2/13/17 order, Ms. Shavers's pleadings did not state a section 1983 claim because the pleadings contained no facts about the role Murphy played in Ms. Shavers's arrest or his connection to alleged constitutional violations. *Id.* at 2-3.

### C. Second Amended Complaint

On May 12, 2017, Ms. Shavers filed a timely Second Amended Complaint ("SAC"), again naming Murphy as the sole defendant. [Docket No. 15]. Liberally construing her original, amended and second amended complaint together, Ms. Shavers alleged that an incident occurred in December 2014 which involved family members and others. She attempted to intervene, and was subsequently arrested and placed in custody. Ms. Shavers was later released on $30,000 bail, and no charges were filed. On March 24, 2015, she was re-arrested and placed in custody for the "same charges," but did not "receive any paperwork." SAC at 5. She was then released on $80,000.00 bail. Compl. at 5. Ms. Shavers alleged that no criminal charges were filed in connection with her second arrest. SAC at 2. She alleged a violation of her Fourth Amendment

rights and requested $150,000 in damages for pain and suffering, lost wages, loss of her job, depression, the bail posted for both arrests, and punitive damages. SAC at 6.

On April 28, 2017, the court dismissed the SAC, explaining that, as in prior pleadings, the SAC still failed to state what Murphy allegedly did to violate Ms. Shavers's constitutional rights. 4/28/17 Order [Docket No. 16].

### D. Third Amended Complaint

On May 12, 2017, Ms. Shavers filed a timely Third Amended Complaint ("TAC"), again naming Murphy as the sole defendant. [Docket No. 17]. In the TAC, Ms. Shavers asserted that Murphy violated her Fourth Amendment rights because he signed an affidavit for an arrest warrant even though he knew that the District Attorney ("DA") had declined to press charges against her. This resulted in her false arrest on March 24, 2015. TAC at 4.

According to the TAC, following the December 2014 arrest, Ms. Shavers contacted the DA numerous times in January 2015 attempting to "exonerate" herself. TAC at 4. The DA declined to press charges. TAC at 5. On March 23, 2015, a number of officers appeared at Ms. Shavers's sister's house with the intention of arresting Ms. Shavers for violation of California Penal Code Section 1399.[2] TAC at 5. Ms. Shavers spoke with the officers because she was concerned about the arrest warrant and was out on bail. *Id*. She declined to give her address to them until she contacted her bail bonds person. *Id*. Ms. Shavers then contacted the DA and the Sheriff's Office about the arrest warrant. *Id*. The DA said that her case was "rejected" and that no further information was needed from her. TAC at 6.

On March 24, 2015, Ms. Shavers was driving when she was pulled over by five police cars. *Id*. at 6. The officers asked her to state her name and told her to exit, then handcuffed her and searched her car. *Id*. The officers said they had an arrest warrant, so Ms. Shavers asked to see it. *Id*. The officers did not present an arrest warrant, and Ms. Shavers was taken to Santa Rita County jail. *Id*. Because the officers did not have an arrest warrant, they made a telephone call to have the warrant faxed to the jail. *Id*. Ms. Shavers was then booked, but later posted $80,000.00

---

[2] There is no California Penal Code Section 1399, so it remains unclear which Penal Code section Ms. Shavers is citing.

4

bail. *Id.*

On March 26, 2015, Ms. Shavers appeared in court but the judge never called her case. TAC at 6. Ms. Shavers and the bailiff then called the DA's office. TAC at 6-7. The DA's office repeatedly told her and the bailiff that her cases were rejected and that the DA's office did not know why she had been arrested on March 24, 2015. TAC at 7.

Ms. Shavers claimed that Murphy had intentionally harassed her. She requested $150,000.00 in punitive damages, as well as compensation for pain and suffering and lost wages. TAC at 5, 8.

On June 30, 2017, Murphy filed a motion to dismiss the TAC. [Docket No. 23]. Because Ms. Shavers did not file a timely opposition, the court issued an order to show cause. [Docket No. 31]. Ms. Shavers filed a timely response, along with an opposition to the motion to dismiss. [Docket Nos. 32-33]. She explained that she had been unable to file a timely opposition due to several visits to the emergency room for pancreas-related problems. [Docket No. 33].

At a hearing held on August 24, 2017, the court denied Murphy's motion to dismiss, and granted leave to amend to file a Fourth Amended Complaint. [Docket No. 37]. At the hearing, the court specifically instructed Ms. Shavers that her Fourth Amended Complaint must plead "all facts that explain why she believes that Officer Murphy violated her constitutional rights, including her allegation that Murphy lied in the sworn affidavit that he submitted to obtain the March 2015 arrest warrant," and that she must also attach a copy of the arrest warrant. 8/24/17 Order [Docket No. 37].

### E. Fourth Amended Complaint

On September 24, 2017, Ms. Shavers filed a timely Fourth Amended Complaint ("FAC"). [Docket No. 38]. It alleges one claim under 42 U.S.C. § 1983 and the Fourth Amendment against Murphy for making numerous false statements "maliciously, oppressively, recklessly, and with deliberate indifference" in his declaration of probable cause in support of the *Ramey* warrant he signed in March 2015.[3]

---

[3] "A '*Ramey* warrant' is a warrant authorizing the arrest of a suspect within the home before the filing of criminal charges by the district attorney." *Millender v. Cty. of Los Angeles*, 620 F.3d 1016, 1021 (9th Cir. 2010), *rev'd sub nom. on other grounds Messerschmidt v. Millender*, 565

5

United States District Court
Northern District of California

1  According to the FAC, Ms. Shavers was arrested on December 22, 2014 for a violation of Penal Code Section 243(a)(battery), and was released on $30,000 bail. FAC at 2. On December 24, 2014, Ms. Shavers went to the courthouse to appear on the charges, but never entered the courtroom because the bailiff handed her a piece of paper stating that no charges were filed. *Id*. Ms. Shavers appeared again in January 2015, and was told that no charges were filed and to contact the DA's office regarding additional court dates. *Id*. It appears that Ms. Shavers went to the courthouse on January 19, 2015, but, as before, was told by the bailiff that no charges were filed and that she should contact the DA's office about her next court date. FAC at 3. Ms. Shavers then contacted the DA's office weekly until she was told by a clerk on January 23, 2015 that she was "exonerated" of the charges. *Id*. Ms. Shavers also contacted the Public Defender's ("PD") office regarding her case. *Id*. The PD's office told her that it had no record of her case number, Case No. 04354381. *Id*. The FAC does not explain the source of this case number.

On March 24, 2015, Ms. Shavers was arrested pursuant to a *Ramey* arrest warrant on the same charges for which she had already been "exonerated." *Id*. She was taken into custody, and later released on $80,000 bail. *Id*. On March 26, 2015, Ms. Shavers appeared in court, but the judge did not call her case. FAC at 4. She then asked the bailiff about seeing the judge, at which point the bailiff checked her name and said that no charges were filed in Case No. 04354381. *Id*. Ms. Shavers and the bailiff then contacted the DA's Office. *Id*. The DA's office stated that it had rejected both Ms. Shavers's case and the *Ramey* warrant. *Id*.

Ms. Shavers attached a copy of the *Ramey* arrest warrant to the FAC. *See* Fed. R. Civ. P. 10(c) (exhibits attached to the complaint are part of the complaint). According to the *Ramey* affidavit, Murphy attests that there was probable cause to arrest Ms. Shavers for assault with a

---

U.S. 535 (2012) (citing *Goodwin v. Superior Court*, 90 Cal. App. 4th 215, 218 (2001)) (citing *People v. Ramey*, 16 Cal.3d 263 (1976)).

Ms. Shavers alleges that Murphy "executed" a *Ramey* affidavit. There is nothing in the record to suggest that Murphy was one of the arresting officers. Since Murphy's sole involvement in this case appears to be based on the fact that he signed a *Ramey* affidavit, the court construes Ms. Shavers's allegations about Murphy's "execution" of a *Ramey* affidavit as referring to the fact that Murphy signed a *Ramey* affidavit.

6

deadly weapon. The facts supporting probable cause were as follows. In the late evening of December 22, 2014, members of the Oakland Police Department ("OPD") were engaged in surveillance around the 900 block of 66th Avenue in Oakland when they saw a large group of people loitering around the courtyard of 940 66th Avenue. *See* Murphy *Ramey* Affidavit [Docket No. 38] at ECF-page 12. California Department of Justice and OPD officers later advised that a large family fight was taking place. *Id*. During the fight, OPD Officer Cruz advised over the police radio that a female, later identified as Michaela Gospel, had fled through the courthouse toward his vehicle looking for assistance. *Id*. At the direction of OPD Sergeant Shavies, Cruz allowed Gospel into his vehicle. *Id*. While Gospel was attempting to get into Cruz's vehicle, someone at the scene fired a firearm. *Id*. Once in Cruz's vehicle, Gospel told Cruz that she had been jumped by a number of women and that one woman had attacked and pistol whipped her. *Id*. at ECF-page 14. During the fight, a woman wearing a white sweatshirt and a surgical mask removed an object from her waistband and struck her with it. *Id*.

At the time of the incident, Shavies saw a black female wearing a white sweatshirt and a surgical mask flee the courtyard in a white Ford Fusion sedan. This individual was later identified as Ms. Shavers. *Id*. Shavies followed Ms. Shavers in his vehicle to the 3300 block of 64th Avenue, at which point he and Cruz directed uniformed officers to detain her because she matched the description of the person described by Gospel. *Id*. An officer detained Ms. Shavers, conducted a visual inspection of her vehicle, and found a hammer in plain view on the driver's seat. *Id*. Ms. Shavers was then taken in for questioning, and provided the interviewing officers with a statement. *Id*. According to the statement given by Ms. Shavers, she was at the 900 block of 66th Avenue because her children were involved in a fight and she wanted to ensure that the fight was fair. *Id*. Ms. Shavers tried to break up the fight and pushed a girl. *Id*. She stated that she hit the girl with her hand, not a weapon. *Id*. Ms. Shavers advised that she had a pair of scissors and hammer in her vehicle. *Id*.

A day after the incident, Shavies and another officer interviewed Ms. Shavers's daughter. *Id*. She corroborated Ms. Shavers's statement about an impending fight, as well as the statement that Ms. Shavers had come to the 900 block of 66th Avenue because of the fight. *Id*. The

1   daughter also confirmed that Ms. Shavers was driving a white Ford sedan, that she was wearing a
2   white sweatshirt with a surgical mask, and that she was armed with a hammer. *Id*. She stated that
3   she did not believe Ms. Shavers struck anyone with a hammer. *Id*. According to footage from a
4   surveillance video, Ms. Shavers hit Gospel in the face with her left hand. *Id*. However, it is
5   unclear whether Ms. Shavers had a hammer in her left hand. *Id*.

   After interviewing Ms. Shavers's daughter, an OPD officer contacted local hospitals to see if they had admitted a possible victim of an assault with a head injury. *Id*. The OPD officer learned that Gospel had been treated for head trauma at Summit Hospital and released on December 23, 2014. *Id*.

   On September 29, 2017, Murphy filed the instant motion to dismiss the FAC. [Docket No. 40]. Because Ms. Shavers did not file a timely opposition by October 11, 2017, the court issued an order to show cause. [Docket No. 41]. Ms. Shavers filed a timely response to the order to show cause along with an opposition to the motion to dismiss. [Docket Nos. 42-43]. Murphy filed an objection to Ms. Shavers's response to the order to show cause as well as a request that she produce certain medical records to corroborate the assertions in her response. [Docket No. 45]. Ms. Shavers subsequently submitted medical records from her emergency room visit to the Kaiser Hospital in Antioch, California from October 12 through 13, 2017. [Docket No. 46].

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–200 (9th Cir. 2003). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted).

When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing

8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A claim has facial plausibility when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). For purposes of Rule 12(b)(6) review, the court reviews documents incorporated into the complaint, as well as judicially noticeable material. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (incorporation by reference); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1006, 1016 n.9 (9th Cir. 2012) (judicial notice).request for judicial notice

## III. REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[A] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).

Murphy submits an unopposed request for judicial notice in support of the motion to dismiss. Request for Judicial Notice ("RJN") [Docket No. 39]. He seeks judicial notice of certain documents filed in this case, including the original and amended complaints; the SAC; the TAC; the FAC; the 8/24/17 Minute Order; the prior dismissal orders; the IFP application; and the order relating the earlier case to this one. *See* Ex. 1-9, 11-12. Murphy also seeks judicial notice of the complaint filed in the related case. *See* Ex. 10. Since these documents are all "matters of public record," the court grants Murphy's request for judicial notice of the existence of the documents set forth in Exhibits 1 through 12, as well as the dates they were filed, but does not take judicial notice of the contents of the documents for the truth of the matters asserted therein because the facts are subject to dispute. *See, e.g.*, *California Sportfishing Prot. All. v. Shiloh Grp., LLC*, --- F. Supp. 3d ----, No. 16-CV-06499-DMR, 2017 WL 3136443, at *5 (N.D. Cal. July 24, 2017) (explaining that courts may not "take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed").

9

## IV. ORDER TO SHOW CAUSE

In the response to the order to show cause, Ms. Shavers explains that she was unable to file a timely opposition because the North Bay wildfires that occurred in October 2017 caused her to lose her voice and required her to seek emergency room treatment for chronic bronchitis and dehydration. [Docket No. 43]. Murphy filed an objection to this response, disputing Ms. Shavers's assertions and requesting that she provide information to support her statements. [Docket No. 45]. In response, Ms. Shavers provided copies of her medical records. They show that Ms. Shavers was admitted into the emergency room at the Kaiser Hospital in Antioch, California on October 12, 2017 for an acute upper respiratory infection and discharged on October 13, 2017. [Docket No. 46].

In the interests of justice and in resolving the case on the merits, the court discharges the order to show cause and will consider Ms. Shavers's late-filed opposition. As this is the second time Ms. Shavers has missed a filing deadline, she is warned that future missed deadlines may result in sanctions.

## V. DISCUSSION

Murphy moves to dismiss the FAC on the ground that it still fails to adequately state a section 1983[4] claim against him, even though the court specifically instructed Ms. Shavers that she must allege sufficient supporting facts. According to Murphy, although the FAC alleges that Murphy knew that Ms. Shavers was previously twice "exonerated" of the charge of assault with a deadly weapon before he signed the *Ramey* affidavit, there are no facts pleaded in the FAC to support this allegation. Murphy argues that the allegations in the FAC demonstrate the exact opposite, rendering her claim implausible. Murphy points out that according to the FAC, the DA and PD offices had no record of any criminal case against her. In the absence of any record of a criminal case against her, it would have been impossible for Murphy to have known that Ms. Shavers had been previously "exonerated" of any charges. Murphy also contends that there are other inconsistencies between the timeline of the investigation described in the *Ramey* arrest

---

[4] Murphy cites to "28 U.S.C. § 1183" in his motion and reply. The court assumes that Murphy intended to cite to 42 U.S.C. § 1983.

warrant and the allegations in the FAC that render Ms. Shavers's claim implausible.

In her opposition, Ms. Shavers does not directly respond to Murphy's main argument. Instead, she asserts that she has adequately pleaded a Fourth Amendment violation, and repeats many of the allegations in the FAC.

**A. Section 1983 and the Fourth Amendment**

1. Legal Principles

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under section 1983, a plaintiff must allege two elements: 1) that a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

An officer may be liable under section 1983 for a Fourth Amendment violation if the officer "knowingly or with reckless disregard for the truth includes material false statements or omits material facts in an affidavit submitted in support of a warrant application." *Rutledge v. Cty. of Sonoma*, No. C 07-4274 CW, 2008 WL 2676578, at *7 (N.D. Cal. July 1, 2008); *Brown v. Alexander*, No. 13-01451 SC, 2013 WL 6578774, at *7 (N.D. Cal. Dec. 13, 2013) (same); *see also Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1295 (9th Cir. 1999). This type of Fourth Amendment violation is called a "*Franks*" claim, named after *Franks v. Delaware*, 438 U.S. 154 (1978).[5] *Brown*, 2013 WL 6578774, at *7.

To allege a *Franks* claim, "a plaintiff must show that the defendant deliberately or

---

[5] In *Franks*, the U.S. Supreme Court held that a criminal defendant has a right to an evidentiary hearing where the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included" in a search warrant affidavit, and the "allegedly false statement is necessary to the finding of probable cause." *Id*. at 155–56. The Ninth Circuit has held that "the *Franks* standard, although developed in the criminal context, also defines the scope of qualified immunity in civil rights actions." *Liston v. Cty. of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997), as amended (Oct. 9, 1997).

recklessly made false statements or omissions that were material to the finding of probable cause." *Brown*, 2013 WL 6578774, at *7 (citing *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (citation and internal quotation marks omitted).

2. Analysis

Liberally construing the allegations in the FAC and the statements in the opposition to the motion to dismiss, Ms. Shavers appears to be bringing a *Franks* claim against Murphy. She asserts that Murphy made numerous statements "maliciously, oppressively, recklessly, and with deliberate indifference" in his *Ramey* affidavit, including that Ms. Shavers had pistol whipped someone and was charged with a violation of Penal Code Section 245(A)(1), assault with a deadly weapon. FAC at 5-6. According to Ms. Shavers, Murphy also omitted material facts from his *Ramey* affidavit, including that Ms. Shavers was twice "exonerated" of the charge of assault with a deadly weapon, had shown up for every court appearance between December 2014 and March 2015, and was in constant contact with the DA's office about her case. FAC at 5-7. Per Ms. Shavers, Murphy knew about the omitted information because it was "public." She argues that had the judge who reviewed the *Ramey* warrant been made aware of the fact that she had already been "exonerated" of the charges, as well as the other facts Murphy failed to include, the judge would not have issued the arrest warrant. As result of Murphy's material misstatements and omissions, Ms. Shavers was arrested a second time and had to post bail in the amount of $80,000, which caused her to miss work. *Id*. at 8.

At the August 24, 2017 hearing on Murphy's motion to dismiss the TAC, the court specifically instructed Ms. Shavers to plead "<u>all facts</u> that explain why she believes that Officer Murphy violated her constitutional rights, including <u>her allegation that Murphy lied in the sworn affidavit that he submitted to obtain the March 2015 arrest warrant</u>" in the FAC. 8/24/17 Order [Docket No. 37] (emphasis added).

Although the allegations are more robust than in the prior pleadings, the FAC still fails to plead sufficient facts to state a claim. The FAC makes conclusory allegations that when Murphy

12

signed the *Ramey* affidavit, he knew that Ms. Shavers had previously been "exonerated" for the same charge at issue in the *Ramey* arrest warrant, and also knew that she had previously appeared in court multiple times. It is unclear what Ms. Shavers means by the word "exonerated." Does she mean that she was absolutely cleared of the possibility of any charges ever being filed against her in connection with the December 2014 incident? If so, who told her she had been "exonerated," and what exactly did they tell her in this regard? Being absolutely cleared of a charge is materially different from being told that no charges were going to be filed against her at the particular time she communicated with the DA's office, for this leaves open the possibility that charges could be pursued later upon further investigation.

Ms. Shavers also does not include any facts to explain how Murphy supposedly knew that she had been "exonerated," and from what source he obtained this information. Instead, the allegations in the FAC are vague. Ms. Shavers states that the information was "public," but this raises more unanswered questions. How was the information "public?" Was it available on a public source, such as a court docket? If so, what was the source, and what exactly did it say? Was the information available to Murphy, and if so, how? Was the information so obviously known to Murphy that its omission from the *Ramey* affidavit would support a reasonable inference that Murphy acted deliberately or with reckless disregard in leaving it out? Additionally, how does Ms. Shavers know that Murphy knew about the information prior to preparing the *Ramey* affidavit?

In light of the above, the court finds that Ms. Shavers still has failed to allege sufficient facts to state a Fourth Amendment claim.

**B. Leave to Amend**

"A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). Ms. Shavers has had multiple opportunities to plead a claim, and has not yet done so successfully. However, it is not "absolutely clear" that the deficiencies described above cannot be cured by amendment. Therefore, the court provides Ms. Shavers **this last opportunity** to file a Fifth

13

Amended Complaint to address the deficiencies identified in this order.

### C. Qualified Immunity

Murphy contends that if Ms. Shavers has stated a Fourth Amendment claim, it must still be dismissed because he is entitled to qualified immunity. Since the FAC is dismissed with leave to amend, the court need not consider whether Murphy is entitled to qualified immunity.

### D. CONCLUSION

In conclusion, the court grants Murphy's motion to dismiss with leave to amend. Ms. Shavers shall file a Fifth Amended Complaint by no later than January 22, 2018. **Failure to timely file a Fifth Amended Complaint may result in dismissal for failure to prosecute.**

**IT IS SO ORDERED.**

Dated: January 8, 2018



Donna M. Ryu
United States Magistrate Judge

14